# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION

CLARENCE L. RUSSELL                                                        PLAINTIFF

v.                                        CIVIL ACTION NO. 5:17CV-P54-GNS

FIRST BAPTIST CHURCH, FULTON, KY *et al.*                   DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Clarence L. Russell, a state prisoner currently incarcerated in the Kentucky State Reformatory, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. This matter is before the Court on initial screening of the complaint pursuant to 28 U.S.C. § 1915A. For the reasons that follow, the Court will dismiss the action.

## I.

Plaintiff brings this civil-rights action against the following Defendants in their individual and official capacities: (1) First Baptist Church in Fulton, Kentucky; (2) Youth Pastor Jeff Bowman; (3) Centri-Kid Camp at Lambuth College in Tennessee; (4) Cortney Meyer, a counselor at Centri-Kid Camp; (5) Fulton Police Department (FPD); (6) FPD Det. Sgt. Steven Williams; (7) FPD Sgt. Buckingham; (8) FPD Sgt. Purcell; (9) FPD Ofc. Latta; (10) FPD Ofc. Jere Hughes; (11) Department of Child Based Services, KY (DCBS); (12) Diann Sheppard, caseworker for DCBS; (13) Fulton County Detention Center (FCDC); (14) FCDC Jailer Ricky Parnell; (15) Fulton County Judicial System; (16) Michael Stacy, Commonwealth's Attorney; (17) Margot Merrill, Attorney with the Department of Public Advocacy; (18) Popular Bluff Police Department (PBPD) in Missouri; and (19) PBPD Det. Jeff Shackleford.

In the sealed memorandum attached to the complaint, Plaintiff alleges that in July 2009 Defendants Bowman and Meyer reported a crime allegedly committed by Plaintiff by contacting

Defendants Hughes and Williams of the FPD. Plaintiff claims that Defendants Sheppard and Williams interviewed the alleged victim, who Plaintiff claims was coached on what to say by Defendant Bowman. Plaintiff further claims that Defendant FPD and its officers, Defendants Williams, Buckingham, Purcell, Latta, and Hughes, failed to read him his *Miranda*[1] rights and conducted an illegal search and seizure in July 2009. Plaintiff claims that on July 24 or 28, 2009, Defendants Williams, Buckingham, Purcell, Latta,[2] and Sheppard served an arrest warrant and a search warrant at Plaintiff's residence. Plaintiff reports that during his transport to and interview at the FPD, he kept asking for a lawyer but that Defendant Williams denied his requests. Plaintiff also alleges that he has a history of mental health problems, which Defendant Sheppard should have told Defendant Williams about before his interview with Plaintiff. Plaintiff also lists several items which were allegedly seized during the search in July 2009.

In addition, Plaintiff alleges that in 2005, Defendant Shackleford of the PBPD in Missouri had an open case on Plaintiff which was later closed. He claims that following Kentucky's imposition of criminal charges against him in July 2009, Defendant Shackleford reopened the Missouri case and went to Kentucky to assist Defendant Williams.

As to the Fulton County Judicial System, Plaintiff cites to Case # 09-CR-00045 and claims that his public defender, Defendant Merrill, was ineffective for several reasons; that the trial court violated his due process rights and a fair trial by improperly admitting a hearsay statement and not allowing his attorney to question a prosecution witness regarding bias and

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).
[2] Plaintiff also claims that his wife told him that following the search of his house in 2009, Defendant Latta went to Plaintiff's house "many times" and that Plaintiff's dog growled at him; that "a couple of months later the dog was ready to have pups"; that when his wife and daughter returned from the store that "the dog had had her pups (eight). But the dog was dead. She had green liquid come out . . . glycol poisoning (antifreeze)." Plaintiff claims that about a week later a neighbor told Plaintiff's wife that "Patrolman Latta was seen leaving the pourch of the house with a plastic bottle. The next day the dog was dead."

credibility; that Defendant Merrill was engaged in an affair with the Commonwealth's Attorney, Defendant Stacy, and that the trial judge knew about it; that in October 2009 the trial judge ordered a "Profession Investigation and Security Consultants" that was never conducted, which resulted in Plaintiff being denied a fair trial; and that the trial judge "allowed [Defendant Shackleford of Missouri] to enter this case."

Plaintiff also complains of various jail conditions during his incarceration at the FCDC "from July 2009 until the time he left."[3] First, he alleges "Inadequate Housing" due to "Numerous insects"; overcrowding (requiring him "to sleep on the floor with a mat for many of nights"); "Inadequate or no ventilation for fresh air" causing him to "suffer[] headaches and nausea from time to time"; and inadequate lighting in cells for safety. Second, he alleges "Inadequate Medical Care" because he was "unable to obtain examinations or care upon request. [He] has a mental health problem and no treatment at all." Third, Plaintiff claims an "Unsafe Environment" because he "was Assault from time to time and a other inmate protect Russell." He claims that the jail was reckless and failed to train, manage, and supervise. Lastly, Plaintiff alleges a denial of access to courts because "no way to call Attorney."

Finally, Plaintiff claims that in the summer of 2009, he and his family were having a cookout and picnic in the park; that Defendant Latta came to the park and said that they were not allowed there and "took the meat off the grill and threw it on the ground"; that Plaintiff and his family packed up and left and went to eat elsewhere; and that when Plaintiff went to the police department to report the incident involving Defendant Latta, the police chief said, "'He can do what he wants.'"

---

[3] While Plaintiff does not indicate in the instant complaint when he left the FCDC, an attachment to another of Plaintiff's complaints filed in this Court reveals that in March 2011, he was incarcerated in Eastern Kentucky Correctional Complex. *See Russell v. Baptist Healthcare System, Inc., et al.*, Civil Action No. 5:17CV-92-TBR (DN 1-6, pp. 10-11 ("Negligence and Malpractice Lawsuit," McCracken Circuit Court, 17-CI-00216)).

3

As relief, Plaintiff seeks compensatory and punitive damages and declaratory relief. He also asks that this Court investigate his criminal case and "Reverse his sentence and Dissmiss all charges against him after the investigation is complete."

## II.

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing

4

*Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although courts are to hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519 (1972), this duty to be less stringent "does not require us to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require courts "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. *Public Defender Merrill*

"A lawyer representing a client is not, by virtue of being an officer of the court, a state actor under color of state law within the meaning of § 1983." *Otworth v. Vanderploeg*, 61 F. App'x 163, 165 (6th Cir. 2003) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981)). While an exception exists if an attorney has engaged in a conspiracy with state officials to deprive another of federal rights, *see Tower v. Glover*, 467 U.S. 914, 920 (1984), Plaintiff has not set forth facts sufficient to state a conspiracy claim. *See Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Hooks v. Hooks*, 771 F.2d 935 (6th Cir. 1985). Plaintiff, therefore, fails to state a § 1983 claim against Defendant Merrill, and the claims against her will be dismissed.

### B. *Statute of Limitations*

Section 1983 does not contain its own statute of limitations period, but it is well settled that constitutional claims asserted under § 1983 are governed by the state personal injury statute of limitations. *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)). Personal injury actions in Kentucky "shall be commenced within one (1) year after the cause of action accrued." Ky. Rev. Stat. § 413.140(1); *Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 182 (6th Cir. 1990).

Though the applicable statute of limitations is determined by state law, the "date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (2007) (citing *Kuhnle Bros., Inc. v. Cty. of Geauga*, 103 F.3d 516, 519 (6th Cir. 1997)). "[I]t is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (citing *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201

(1997) (internal quotation marks and citations omitted)). In other words, "the statute of limitations begins to run when the plaintiff knows or has reason to know of the injury which is the basis of his action and that a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Collard v. Ky. Bd. of Nursing*, 896 F.2d at 183. "[A] claim for wrongful arrest under § 1983 accrues at the time of the arrest or, at the latest, when detention without legal process ends." *Fox v. DeSoto*, 489 F.3d at 233 (citing *Wallace v. Kato*, 549 U.S. at 397). Additionally, a claim of unlawful search and seizure accrues at the time of the alleged search and seizure. *See Harper v. Jackson*, 293 F. App'x 389, 392 n.1 (6th Cir. 2008) ("Harper's claims thus accrued on July 31, 2003, the date of the alleged illegal search and seizure."); *Michel v. City of Akron*, 278 F. App'x 477, 480 (6th Cir. 2008) ("[T]he statute of limitations on Michel's Fourth Amendment claims began to run from the search on November 23, 2004.").

Plaintiff complains of incidents leading up to and including a search and seizure and his arrest, all of which Plaintiff states occurred in 2009. Plaintiff makes no allegation that he did not know of his purported injuries at the time they occurred. Thus, the statute of limitations began to run in 2009 and ended one-year later in 2010. Because Plaintiff did not file his complaint until many years later on April 3, 2017,[4] those claims are time-barred.[5] Specifically, the following

---

[4] In the complaint, Plaintiff certifies that he delivered his complaint to the prisoner mail system for mailing on April 3, 2017. Under the prison mailbox rule, the complaint is deemed filed when presented to prison officials for mailing. *Miller v. Collins*, 305 F.3d 491, 497-98 (6th Cir. 2002) (citing *Houston v. Lack*, 487 U.S. 266 (1988)).

[5] In the complaint, Plaintiff also alleges a violation of the Religious Freedom Restoration Act (RFRA) and the Religious Land Use and Institutionalized Persons Act (RLUIPA) arising out of 2009 incidents. It is unclear how these Acts relate to his claims. Nonetheless, courts have applied a four-year statute of limitations period to RFRA and RLUIPA claims. *See, e.g.*, *Fernandez-Torres v. Watts*, No. 2:16-CV-24, 2016 WL 796100, at *6 (S.D. Ga. Feb. 26, 2016) ("The RFRA was enacted in 1993, and, therefore, the four-year statute of limitations under Section 1658 applies to Plaintiff's RFRA claims."); *Dayson v. Cass Cty. Bd. of Comm'rs*, No. 1:12-CV-1307, 2013 WL 1500672, at *2 (W.D. Mich. Apr. 10, 2013) ("Congress did not include a separate limitations period for bringing an action under RLUIPA. However, other courts have applied the four-year statute of limitations as set forth in 28 U.S.C. § 1658(a),

7

claims are time-barred: Plaintiff's claims related to Defendants First Baptist Church, Bowman, Centri-Kid Camp, Meyer,[6] DCBS, and Sheppard in reporting and investigating the alleged crime and in interviewing the victim, all of which Plaintiff claims occurred in 2009; and Plaintiff's claims against Defendants FPD, Williams, Buckingham, Purcell, Latta, Hughes, PBPD, and Shackleford for unreasonable search and seizure and false arrest/imprisonment, which Plaintiff claims occurred in 2009. While they do not appear to be related to the alleged incidents ultimately leading to his criminal conviction, Plaintiff's claims that Defendant Latta forced Plaintiff and his family from a park and that Defendant Latta hurt the family dog, all of which Plaintiff claims occurred in 2009, are also untimely.

As to Plaintiff's claims related to his conditions of confinement at the FCDC, those conditions occurred from 2009, until his release from that institution, which one of Plaintiff's other cases reveals was at least by sometime in March 2011. *See, e.g.*, *In re Moncier*, 488 F. App'x 57, 61 (6th Cir. 2012) ("The district court was permitted to take judicial notice that these briefs, which were public records, were signed by Moncier."). Because he did not file the instant action until over six-years later, his conditions-of-confinement claims fall well outside of the one-year limitations period and are untimely.

While the statute-of-limitations is an affirmative defense, when the face of the complaint shows that an action is time barred, the case may be dismissed summarily upon screening. *Jones*

---

for civil actions 'arising under an Act of Congress enacted after [December 1, 1990].'") (citing *Al-Amin v. Shear*, 325 F. App'x 190, 193 (4th Cir. 2009); *Congregation Adas Yereim v. City of New York*, 673 F. Supp. 2d 94, 107 (E.D.N.Y. 2009) ("It is undisputed that the four-year catch-all federal statute of limitations, codified at 28 U.S.C. § 1658(a), governs claims brought under RLUIPA.")). The limitations period, therefore, for the 2009 incidents would have expired in 2013, well before the April 3, 2017, filing date of the complaint.

[6] It is unlikely that Defendants First Baptist Church, Bowman, Centri-Kid Camp, and Meyer are state actors as "providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'" *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) (citing *Briscoe v. Lahue*, 460 U.S. 325, 329 (1983)). Even if they are state actors, the claims against them are untimely.

*v. Bock*, 549 U.S. at 215; *Castillo v. Grogan*, 52 F. App'x 750, 751 (6th Cir. 2002) ("When a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, sua sponte dismissal of the complaint as frivolous is appropriate."). Accordingly, the foregoing claims are untimely and will be dismissed as frivolous. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

### C. Heck v. Humphrey

Under *Heck v. Humphrey*, 512 U.S. 477, 484 (1994), any civil-rights claim which would necessarily call into question the validity of a criminal conviction is not cognizable until that conviction is reversed or otherwise vacated. The *Heck* Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Heck*, 512 U.S. at 486-87 (footnote omitted). If a ruling on a § 1983 claim would necessarily imply the invalidity of any outstanding criminal judgment against the plaintiff, the § 1983 claim must be dismissed, not for lack of exhaustion of state remedies, but because it is simply not cognizable until the criminal judgment has been terminated in the plaintiff's favor. *Id.* at 487. The requirement that the prior criminal action ended favorably for the accused "'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.'" *Id*. at 484 (citation omitted).

9

In the present case, Plaintiff raises various constitutional claims related to the prosecution and trial arising out of his 2009 arrest, including ineffective assistance of counsel and denial of due process, a fair trial, and the Confrontation Clause. A ruling by the Court that Defendants Fulton County Judicial System, Commonwealth's Attorney Stacy, or any other Defendant violated his constitutional rights during the prosecution leading to his criminal conviction would necessarily render that conviction invalid. "[C]ivil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments . . . ." *Id*. at 486. Plaintiff's criminal conviction has not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus.[7] The *Heck* doctrine, therefore, bars Plaintiff's claims related to his conviction that are not time-barred, and those claims will be dismissed.

## IV.

For all the foregoing reasons, the instant action will be dismissed by separate Order.

Date: November 7, 2017

**Greg N. Stivers, Judge**
**United States District Court**

cc:  Plaintiffs, *pro se*
     Defendants
4416.005

---

[7] Plaintiff asks the Court to reverse his sentence and dismiss all charges. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Because Plaintiff is seeking immediate or speedier release from detention, the § 1983 claim for such relief cannot lie and will be dismissed.